IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

STATE OF WASHINGTON,              )
                                  )        No. 31323-9-III
                Respondent,       )
                                  )
        v.                        )
                                  )
DANIEL LEE BROWN,                 )        PUBLISHED OPINION
                                  )
                Petitioner.       )

FEARING, J. — Neither party, out of principle, will budge one cent. So we are

asked to resolve a $17 dispute—who should pay for the copying of a 911 recording

demanded by a pecunious criminal defendant during discovery? The State offers Daniel

Brown's counsel the option to either listen to the recording at the prosecutor's office or

pay the sheriff's office reasonable costs for a copy. Brown argues that he need not pay

for discovery and thus the State's proposal violates CrR 4.7, RCW 10.01.160, and article

I, section 22 of the Washington Constitution. He moved below for dismissal or,

alternatively, to suppress the evidence. The trial court denied his motion. We affirm the

denial of Brown's motion, since the court rule, the statute, and the constitution do not

impose upon the State the expense to copy records for a nonindigent defendant.

FACTS

On January 15, 2012, Daniel Brown sent text messages to his former girl friend, Nicolette Olson, threatening to shoot Olson's new friend, Justin Perrine. Olson received the messages while at Perrine's apartment. The textative Brown consecutively wrote, "I'll be in jail by morning for killing him will you please give me his apartment;" "What if I just walk in and shoot;" and "I'm in the parking lot." Clerk's Papers (CP) at 29.

Nicolette Olson shared the text messages with Justin Perrine. Concerned for his well being, Perrine turned off all lights in his apartment and called 911. When police arrived at Perrine's apartment, they found Daniel Brown parked in the parking lot of the apartment complex. Brown told police he had a pistol concealed in a pocket of his pants. Police handcuffed Brown and retrieved the loaded pistol. Brown admitted to sending threatening text messages to Olson's phone. Police searched his car and found a second loaded firearm. The State charged Brown with felony harassment.

Daniel Brown filed a request for discovery to "inspect" and "copy" any "written or recorded statements" of witnesses the State intended to call at trial. CP at 1. In response, the State disclosed it possessed a recording of the 911 call from Justin Perrine. Brown then requested a copy of the recording. The State informed Brown that he could obtain a copy of the 911 recording from the sheriff's office for $17. The State explained it did not have the technical capability to copy the recording on a disc. If, however, Brown did not want to pay for a recording, the State offered his counsel an opportunity to listen to and

2

record the 911 call at the Spokane County prosecutor's office. Brown insisted on the receipt of a copy of the recording and demurred at paying for the duplication.

Daniel Brown moved to dismiss the charges against him or, in the alternative, to suppress the 911 recording. Brown argued the State violated the discovery rules in CrR 4.7 when it failed to provide a copy of the recording without charge. The trial court denied Brown's motion, ruling that, although "[t]he defense is entitled to disclosure of the 911 recording under the court rules, there is no finding of indigency or prejudice if defendant is required to pay reasonable costs of duplicating the 911 recording." CP at 33.

## LAW AND ANALYSIS

### CrR 4.7

Daniel Brown did not ask the trial court to impose the copying expense of the 911 recording upon the State. Nevertheless, his motion to dismiss or to exclude the recording from trial presupposes that the State owes the duty to pay for the copying. We must therefore address whether the State owes Brown the duty.

CrR 4.7(a)(1) states, "[T]he prosecuting attorney shall *disclose* to the defendant . . . (i) the names and addresses of persons whom the prosecuting attorney intends to call as witnesses at the hearing or trial, together with any written or recorded statements." (Emphasis added.) In the past, the State argued it need not provide the defense with actual copies of discoverable material, only disclose its existence. In two recent decisions, the Washington Supreme Court rejected this argument and ruled that the State must allow the defense to copy discoverable material. *State v. Grenning*, 169 Wn.2d 47,

3

54, 234 P.3d 169 (2010); *State v. Boyd*, 160 Wn.2d 424, 435, 158 P.3d 54 (2007). In *Boyd*, the superior court entered an order allowing defense counsel to access the mirror image of a computer hard drive, but only in a State facility, during two sessions, and only through the State's operating system and software. Our high court noted that CrR 4.7(a) does not define "disclose." *Boyd*, 160 Wn.2d at 433. But the general usage of "disclose," the policies underlying the rules, and the provisions of CrR 4.7 indicate that "disclose" includes making copies of certain kinds of evidence. *Id.* Where copies of discovery material are necessary for defense counsel to provide effective representation, "CrR 4.7(a) obliges the prosecutor to provide copies of the evidence as a necessary consequence of the right to effective representation and a fair trial." *Boyd*, 160 Wn.2d at 435.

Here, the State does not contest the 911 recording is necessary to an effective defense of Daniel Brown. The State is willing to provide Brown a copy of the recording, but wants Brown to pay for the duplication.

In *Boyd*, the Supreme Court wrote, "Any order . . . should obligate the defense to pay the reasonable cost of duplication." *Id.* at 438. The parties in *Boyd* likely did not contest who paid for the cost of copying, but Brown provides us no decision supporting his position that the State must pay the cost. He also forwards no prejudice to a fair trial in the event he pays the expense. Thus, we hold that CrR 4.7(a) does not require the prosecution to pay for reproduction expenses.

4

RCW 10.01.160

Next, Daniel Brown contends RCW 10.01.160 prohibits the State from imposing costs "inherent in providing a constitutionally guaranteed jury trial." Nevertheless, the State has not imposed any costs. Brown may elect to obtain a copy of the 911 call from the sheriff's office for $17, or may listen to and record the 911 call at the prosecutor's office.

ARTICLE I, SECTION 22 OF THE WASHINGTON CONSTITUTION

Article I, section 22 reads, in pertinent part, "In no instance shall any accused person before final judgment be compelled to advance money or fees to secure the rights herein guaranteed." Daniel Brown argues this provision of Washington's declaration of rights entitles him to discovery materials without charge.

Washington courts have interpreted the constitutional provision on the "advance[ment] of money or fees" at least four times. *Stowe v. State*, 2 Wash. 124, 126, 25 P. 1085 (1891); *State ex rel. Coella v. Fennimore*, 2 Wash. 370, 371, 26 P. 807 (1891); *State ex rel. Mahoney v. Ronald*, 117 Wash. 641, 643, 202 P. 241 (1921); *State v. McCarter*, 173 Wn. App. 912, 921, 295 P.3d 1210 (2010). The first three decisions revolved around the issue of whether a judgment was final. In the latest decision in *McCarter*, the defendant was charged with two driving offenses, and, upon the State's dismissal of charges to pursue enhanced charges in the superior court, the district court imposed warrant fees totaling $250. We held that the district court's imposition of fees did not compel McCarter to advance money or fees in order to secure his rights as a

defendant under the Washington Constitution. None of these four previous decisions are of value in determining whether Brown was "compelled to advance money or fees to secure the rights" guaranteed in article I, section 22 of the Washington Constitution.

We hold Daniel Brown was not "*compelled* to advance money or fees" in violation of article I, section 22 of the constitution. (Emphasis added.) "'Where the language of the constitution is clear, the words used therein should be given their plain meaning.'" *Young v. Clark*, 149 Wn.2d 130, 133, 65 P.3d 1192 (2003) (quoting *City of Tacoma v. Taxpayers of City of Tacoma*, 108 Wn.2d 679, 706, 743 P.2d 793 (1987)). "Compel" means to "force, drive, [or] impel," "as to force by physical necessity or evidential fact." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 463 (1993); BLACK'S LAW DICTIONARY 321 (9th ed. 2009) ("to cause or bring about by force, threats, or overwhelming pressure."). Brown is not being forced, driven, impelled, threatened, or pressured to advance money or fees. Although the recording may be important to his defense, the State does not require him to obtain a copy. Brown is free to forego a copy and may even access the 911 recording without paying money or a fee. Due process affords a criminally accused defendant extensive discovery rights, but we know of no principle requiring the State to bear the expense of copying discovery materials for a nonindigent defendant.

CONCLUSION

The State holds no obligation to pay the costs of duplicating the 911 recording sought by Daniel Brown. Therefore, we affirm the trial court's denial of Brown's motion to suppress the recording or to dismiss the prosecution.

Affirmed.

_____
Fearing, J.

WE CONCUR:

_____
Korsmo, C.J.

_____
Kulik, J.

7