[No. 30513. *En Banc.* March 12, 1948.]

THE STATE OF WASHINGTON, *on the Relation of Jake Bird, Plaintiff*, v. THE SUPERIOR COURT FOR PIERCE COUNTY, *Hugh J. Rosellini, Judge, et al., Respondents.*[1]

[1] Reported in 190 P. (2d) 762.

*Tuttle & Luce,* for relator.

*Patrick M. Steele* and *Earl D. Mann,* for respondents.

HILL, J.—Jake Bird was found guilty of murder in the first degree in Department No. 3 of the superior court for Pierce county on November 26, 1947, and the jury further found that the death penalty should be imposed.

On December 6, 1947, the defendant's motion for a new trial came on for hearing. After overruling the motion, the trial judge asked the defendant whether he had anything to say as to why the judgment of the court should not be pronounced. The defendant spoke at some length, enumerating the reasons why he felt he had not had a fair trial. Upon the conclusion of the defendant's statement, judgment of

death was pronounced and entered. Both of the counsel for the defendant (who had been appointed by the court to represent him) announced that there would be no appeal and asked to be relieved of any further duties in connection with the case.

The defendant denies that he was ever consulted by his attorneys about an appeal, and denies that he authorized them to say that there would be no appeal; and the record shows that he was not asked by the trial court as to whether or not he desired to appeal.

The trial judge, after calling attention to the fact that counsel for the defendant had stated that there would be no appeal, announced that it then became the duty of the court to sign the death warrant, which he proceeded to do, fixing the sixteenth day of January, 1948, as the date on which the defendant was to be hanged.

Before signing the death warrant, the trial judge complimented the counsel who had represented the defendant on having done everything in their power to see that he had a fair and impartial trial, and said:

"I want to assure counsel, both counsel in this case, they cannot be criticised in any way whatever, for not taking an appeal to the Supreme Court in a case where, after hearing all the evidence as presented and the verdict of the jury in their own minds they have done everything they can for the defendant, and an appeal would avail them nothing. I do not believe under those circumstances that the obligation of attorney extends further than that which has been performed by these attorneys in this case."

The death warrant having been signed, the defendant was, on the next day, December 7th, removed from the Pierce county jail and taken to the penitentiary at Walla Walla. The warden of the penitentiary says in his affidavit that on the seventh day of December, 1947, Jake Bird was delivered into his custody and that, as soon as the prisoner arrived at the penitentiary, he made requests for an opportunity to appeal his case; that on the ninth day of December, 1947, the prisoner wrote a letter to the clerk of the superior court for Pierce county giving notice of appeal, and a second letter

requesting a transcript of the record, if attorneys were not appointed to represent him on the appeal, and a third letter to the trial judge informing the judge of his notice of appeal and requesting appointment of counsel to assist him therein; that these letters were written in longhand by the prisoner and reached his (the warden's) desk on December 9th; and

". . . that on the 10th day of December, 1947, I concluded the requests of prisoner were not without merit and I thereupon directed a stenographer to type the letters";

and that the letters to the clerk and to the trial judge were deposited in the United States post office at Walla Walla at or about four p. m. on that day.

The notice of appeal was as follows:

"Clerk of Superior Court
"Tacoma, Wash.

"This is to advise you that I file notice of appeal from my conviction on Nov. 26th and my death sentence on Dec. 6th.

"Jake Bird [signed]"

It is undisputed that this notice of appeal was not received in the office of the clerk of the superior court for Pierce county until December 12, 1947, or the sixth day after the entry of the judgment appealed from. It is likewise undisputed that the letter addressed to the trial judge was not received by him until December 12, 1947; and that, although the prosecuting attorney was on that date notified by the trial judge of the notice of appeal, no copy thereof was served upon him until about January 16, 1948.

The clerk and the trial judge took the position, relying on Rule of Supreme Court 12, subds. (1) (a) and (3), 18 Wn. (2d) 14-a, that the notice of appeal was not timely and that no appeal was initiated thereby. The rule in question reads as follows:

"(1) (a) In criminal causes, in order to initiate an appeal, notice of appeal to the supreme court shall be given in open court at the time, or written notice of appeal shall be served upon the prevailing party and filed in the office of the clerk of the superior court within five days after the entry, of judgment or order from which the appeal is taken. . . .

"(3) Strict conformance with the following requirements shall be necessary, and no appeal to the supreme court in a criminal cause shall be effectual unless:

"First, notice of appeal shall have been given in the manner and at the time specified in (1) (a) of this rule; . . ."

Based upon these facts, Jake Bird made application for a writ of mandate requesting this court to hold that his notice of appeal, received by the clerk of the superior court for Pierce county on December 12, 1947, initiated an appeal; and that we direct the judge of Department No. 3 of the superior court for Pierce county to direct the clerk of the superior court for that county to comply with Rule 12 (1) (b); and that the clerk be required to take such further steps as are required of a clerk of the superior court in a criminal appeal.

(We have to this point referred to Mr. Bird as the defendant; the warden's affidavit referred to him as the prisoner; by his application for a writ of mandate he became the relator in the present proceeding, endeavoring to secure for himself the status of appellant. We shall henceforth, to avoid any confusion, refer to him as Bird.)

We have repeatedly held that the filing of a notice of appeal within the five-day period is jurisdictional; and the clerk and the trial judge, not being apprised of all of the facts, were justified in taking the position that the notice received by the clerk on the sixth day following the entry of the judgment did not initiate an appeal.

We held, by a divided court, in *State v. Brown*, 26 Wn. (2d)' 857, 176 P. (2d) 293, that in capital cases this court might exercise its discretion and release the rigid requirements of Rule 12 for sufficient cause shown. Without commenting upon and without relying upon that case, we hold that a combination of circumstances for which various officials representing the state and county were responsible, prevented the exercise by Bird of his constitutional right of appeal within the five-day period allowed by the rule, and that, consequently, the rule has no applicability to this case.

Art. I, § 22 (see the tenth amendment), of our state con-

stitution provides that, in criminal prosecutions, the accused shall have "the right to appeal in all cases." We have already set forth the applicable rule limiting that right to a period of five days after the entry of the judgment from which the appeal is taken. That rule assumes that a defendant, or attorneys representing him, would have an opportunity to file a notice of appeal within the five-day period.

By way of illustration, suppose a person convicted of crime, whose attorneys had been discharged from further service by the court, was, immediately after the entry of the judgment, placed in solitary confinement by the sheriff and held *incommunicado* for a period of five days. We believe that no one would contend that such an action on the part of the sheriff had deprived the defendant of his right of appeal. The five-day limitation contained in the rule is not applicable where representatives of the state or county have totally or substantially obstructed the defendant's right of appeal.

Let us review the situation here presented:

(a) At the time of judgment and sentence, Bird's attorneys, having stated that they did not intend to appeal, were excused from further service in the case, and the trial judge stated that an appeal would avail nothing. It seems to us that Bird, being now without counsel, should have been advised of his right of appeal and the limitations thereon and given an opportunity to express his own desires.

(b) The death warrant was signed on the same day as the judgment and sentence, apparently in reliance on the statement of Bird's attorneys that they did not intend to appeal. Bird had not authorized that statement by his attorneys, and made no such statement himself.

The first sentence of the statute relative to the signing of death warrants is as follows:

"When judgment of death is rendered following conviction *and no appeal is taken,* or the judgment has been affirmed on appeal, a death warrant shall be issued by the clerk of the trial court, which said warrant shall be signed

by a judge of said court and attested by the clerk thereof under the seal of the court. . . . " (Italics ours.) Rem. Rev. Stat., § 2210 [P.P.C. § 257-39].

We pass the question as to whether the signing of the death warrant before the expiration of the appeal period is premature, and merely say that it is the better practice to withhold signing of a death warrant until the appeal period has expired, because a defendant can exercise his constitutional right to appeal at any time within that five-day period, notwithstanding any previous statements by himself or his counsel to the effect that no appeal would be taken.

Had Bird remained in the Pierce county jail during the appeal period, the signing of the death warrant before that period expired would not have been particularly significant. The evil, so far as he was concerned, lay not in the signing of the death warrant on December 6, 1947, but in the events which it precipitated.

(c) By reason of the signing of the death warrant on December 6th, it was possible to remove Bird immediately to the penitentiary at Walla Walla, which was done on December 7th, or the first day of the five-day period allowed for an appeal. The distance between Tacoma and Walla Walla ultimately proved to be the reason why his notice of appeal was not timely filed.

(d) The warden states that, from the time of his arrival at the penitentiary, Bird insisted on his right to appeal, yet he was not permitted to prepare his notice of appeal until December 9th. The warden, presuming to pass upon the question of Bird's right to appeal, did not decide until December 10th that his requests "were not without merit"; whereupon, his letters were typed and mailed at four p. m. on that date. (The foregoing is not said in criticism of the warden, for it was, to say the least, an unusual situation which confronted him, and his full, fair, and frank affidavit has been of great value in getting the facts before this court. It is to be noted that Bird was without counsel from December 6, 1947, until the warden persuaded his present counsel to undertake his representation on January 8, 1948.)

As we have previously indicated, we regard the combination of circumstances outlined in (a), (b), (c), and (d), for which no single individual was responsible, as having resulted in such a substantial obstruction, by representatives of the state and county, of Bird's right of appeal during the five-day period allowed him for that purpose by our rule as to deprive him of that right.

Since the five-day period for initiating an appeal established by the rule cannot apply under such circumstances, the question then becomes whether Bird proceeded as expeditiously as reasonably possible to initiate his appeal. We believe that he did. We have no hesitancy in saying that the filing of the notice of appeal on December 12, 1947, and the service thereof on the prosecuting attorney on January 16, 1948, were sufficient to initiate an appeal; and the clerk of the superior court for Pierce county is directed to treat the notice of appeal by Bird, received by him on December 12, 1947, as a valid notice of appeal from the judgment entered on December 6, 1947, and to comply with Rule of Supreme Court 12(1)(b) forthwith, and to take such other and further steps as are required of the clerk of a superior court in a criminal appeal.

(The clerk being before this court as one of the respondents to the application for a writ of mandate, we see nothing to be gained by the circumlocution of directing the judge of Department No. 3 of the superior court for Pierce county to direct the clerk of that court to do the things above indicated, although that is the relief requested in the application for the writ.)

The failure to serve this notice of appeal upon the "prevailing party" until January 16, 1948, gave us more concern than the one-day delay in filing the notice of appeal; but that, too, can be said to have been as expeditious as reasonably possible when we take into consideration that Bird had no attorney from December 6, 1947, until January 8, 1948, and that his counsel were then confronted with the emergent problem of staying an execution set for January 16th, and that, unless that could be done, his right of appeal would have been of academic interest only. His attorneys

made immediate application to this court for a writ of *habeas corpus,* and January 15th was the date set for a hearing thereon. It became unnecessary to hold the hearing when the governor, on January 14th, granted Bird a sixty-day stay of execution.

Bird also made application for a writ of mandate directing the judge of Department No. 3 of the superior court for Pierce county to order the official court reporter to prepare, at the expense of Pierce county, a transcript of the reporter's shorthand notes into longhand, of all the testimony and other proceedings in the case of State of Washington v. Jake Bird, in accordance with Rem. Supp. 1943, § 42-5 [P.P.C. § 108-9], which provides:

" . . . That when the defendant in any criminal case shall present to the judge presiding satisfactory proof by affidavit or otherwise that he is unable to pay for such transcript, the judge presiding, if in his opinion justice will thereby be promoted, may order said transcript to be made by the official reporter, which transcript fee therefor shall be paid out of the county treasury as other expenses of the court are paid."

An application for such a transcript was made by Bird through his present attorneys about January 16, 1948, and was denied on the ground that the judge believed that the notice of appeal received by the clerk on December 12, 1947, did not initiate an appeal, and that, consequently, the court was without authority or jurisdiction to afford the relief prayed for. We quote a portion of the judge's letter to the present counsel for Jake Bird, notifying them of his refusal to grant the application referred to and other relief requested:

"This Court will in the future, as in the past, protect the constitutional rights of any accused, regardless of how heinous the crime with which he may be charged. Since this Court has no authority or the jurisdiction to afford you the relief prayed for, this Court has taken the liberty of notifying you of its intended ruling."

We deny this application for a writ of mandate and direct that the judge of Department No. 3 of the superior court for Pierce county again pass upon the application for such

a transcript, in the light of our holding that an appeal was initiated by the notice of appeal received by the clerk on December 12, 1947.

■■ Bird also made application for a writ of mandate directing the judge of Department No. 3 of the superior court for Pierce county to: (1) enter an order permitting Bird to prosecute his appeal *in forma pauperis*; (2) enter an order directing the clerk of the superior court to prepare and file and certify in the manner provided by law, at the expense of Pierce county, a transcript of the records and files in the case; and (3) recall the death warrant issued on December 6, 1947, and issue no further such warrant until the appeal has been determined.

All of these applications are denied: the first because it would be meaningless, as we have had no statutory reference to appeals *in forma pauperis* in criminal proceedings since the repeal of Rem. Rev. Stat., § 1729 [P.P.C. § 5-37], in 1943, and the only assistance at public expense to which an indigent defendant is entitled in prosecuting an appeal is that provided for in Rem. Supp. 1943, § 42-5, heretofore discussed; the second because Rem. Rev. Stat., § 1729, on which the request for a transcript of the records and files to be furnished by the clerk of the superior court at the county's expense, is apparently based, was, if not superseded by Rule of Supreme Court 12, specifically repealed in 1943; the third because, the date fixed by the death warrant for the execution having passed, the death warrant had become inoperative and there is no necessity for its recall (Rem. Rev. Stat., § 2222 [P.P.C. § 134-61]; *Grossi v. Long*, 136 Wash. 133, 238 Pac. 983), and, an appeal having been taken, no death warrant can issue unless and until the judgment is affirmed. Rem. Rev. Stat., § 2210.

Should the judge of Department No. 3 of the superior court for Pierce county refuse the application for a transcript of the reporter's shorthand notes of the testimony and other proceedings taken in the case of State of Washington v. Jake Bird, his ruling might again be brought to this court for review before a statement of facts could be

prepared, certified, and filed and appellant's opening brief prepared and filed.

Since it is now almost ninety days since the notice of appeal was given, it is ordered that the ninety-day period for the filing and certification of the statement of facts and the filing of appellant's opening brief shall run from the date on which the application for the transcript referred to is granted or denied by the judge of Department No. 3 of the superior court for Pierce county, provided that, if either party shall bring up the ruling on the application aforesaid for review by this court, then the ninety-day period shall run from the date of the determination of the matter by this court.

The mandate to the clerk of the superior court for Pierce county shall issue as hereinbefore directed, and the judge of Department No. 3 of the superior court for Pierce county is directed to again pass upon Bird's application for a transcript, to be furnished at the expense of Pierce county, of the official court reporter's shorthand notes into longhand, of all the testimony and other proceedings taken in the case of State of Washington v. Jake Bird.

MALLERY, C. J., BEALS, and STEINERT, JJ., concur.

SCHWELLENBACH, J. (concurring in the result)—I concur in the result, but want it distinctly understood that we are not prejudging any action which the superior court for Pierce county might take on the application to be made for a transcript. This court adopted Rule 12(1)(a), and we have the right in capital cases, in the event we feel that accused's constitutional right of appeal has, by a series of circumstances beyond his control, been denied, to refuse to apply the rule. However, the legislature, in Rem. Supp. 1943, § 42-5, placed the initial responsibility for determining whether or not a transcript shall be furnished an accused at the expense of a county, upon the judge of the county where the application is made, and that judge should feel perfectly free to exercise his discretion in determining whether or not "justice will thereby be promoted."

MILLARD, J. (dissenting)—The reasons advanced in the majority opinion for disregard of the rules respecting appeals in criminal cases are not more cogent than the excuses of the majority for flouting those rules in *State v. Brown*, 26 Wn. (2d) 857, 176 P. (2d) 293.

This court again holds that our solemn pronouncement in *State v. Currie*, 200 Wash. 699, 94 P. (2d) 754, that even in a criminal case we will not except a particular individual from the operation of a rule or excuse its violation in a particular instance, is meaningless, and that our adjudications are in the same class as a restricted railroad ticket, good for this day and train only.

"Respect for tribunals must fall when the bar and the public come to understand that nothing that has been said in prior adjudication has force in a current controversy." Dissenting opinion of Justice Roberts in *Mahnich v. Southern S. S. Co.*, 321 U. S. 96, 64 S. Ct. 455.

We refused to relax the rules in *State v. Schafer*, 154 Wash. 322, 282 Pac. 55, and *State v. Hall*, 185 Wash. 685, 56 P. (2d) 715, and exacted of those defendants the extreme penalty.

We say, in effect, that the more atrocious the crime, the more lax will be the rules of practice and procedure in favor of the criminal. The murderer has every reason now to believe that the date of his incarceration in the state penitentiary, or the date of his execution for a crime committed, will be extended indefinitely. Shall we further relax the rule in favor of the rapist, the burglar, the embezzler, the highway robber, the kidnapper, and the arsonist?

Doubtless the next step will be to have graduated rules with respect to each criminal. In *State v. Brown, supra,* the defendants are charged with having committed the murder of which they stand convicted, September 29, 1945. March 22, 1946, the appeal in that case was dismissed because of failure of the defendants to comply with rules which we held in prior cases were jurisdictional. April 26, 1946, we granted petition of defendants for a rehearing and motion to vacate the order of dismissal of the appeal. In June, 1946, motion for vacation of the order of dismissal

was argued to the court *En Banc.* On January 3, 1947, (*State v. Brown,* 26 Wn. (2d) 857, 176 P. (2d) 293), a majority opinion of this court to vacate the order dismissing the appeal was filed. June 9, 1947, the appeal on the merits was argued to Department One of this court and the cause assigned for opinion. Six months later, the judge to whom the cause was assigned released his opinion. One of the judges of Department One dissented, whereupon the cause was set for hearing *En Banc,* March 10, 1948. When that cause is heard, it will be again assigned for opinion. In other words, the defendants in *State v. Brown, supra,* will, probably, three years after commission of the crime of murder, not yet be required to pay the penalty for their crime.

The criticism by counsel for the state in the case at bar of the observation in the majority opinion in *State v. Brown, supra,* that the language used in the rules respecting appeals in criminal cases is not applicable to cases in which the death penalty has been imposed, is merited. I agree that the language ignores the procedure established to promulgate rules to expedite the speedy determination of criminal appeals. We stated in *State v. Currie, supra,* that it might well be doubted whether there is any other statute or rule in force in this state which received, prior to its enactment, a more thorough and more expert study, than the rule of procedure under discussion.

I further concur in the criticism of counsel for the state in the case at bar, that there is no sound basis in reason nor in authority for the result in *State v. Brown, supra.*

Nor do I agree with the majority opinion, which directs the superior court for Pierce county to again pass upon Bird's application for a transcript to be furnished at the expense of Pierce county.

In *State ex rel. Marr v. Superior Court,* 163 Wash. 459, 1 P. (2d) 331, we denied to a defendant a transcript on appeal. We reviewed the prior cases on the question, which is the same as that involved in the case at bar. We there held that the constitutional provision under which a person convicted of crime is given the right to appeal does not in-

clude the right to require the county to defray the cost of a transcript on appeal in the case of an impecunious defendant. We further held that the statute (Rem. Rev. Stat., § 42-5 [P.P.C. § 108-9]), which authorizes the trial judge, upon satisfactory proof of inability to pay, to order a transcript if, in his opinion, justice will thereby be promoted, vests the matter in the discretion of the trial judge. The only statutory authority pertaining to costs on appeal, so far as indigent defendants are concerned, will be found in Rem. Rev. Stat., § 42-5, as amended by the Laws of 1943, chapter 69, § 4, p. 129, which was interpreted by this court in *State ex rel. Marr v. Superior Court, supra.*

I repeat the statement made in my dissenting opinion in *State v. Brown, supra,* that there is no authority on which this court may permit the filing of appeal *in forma pauperis.* Rem. Rev. Stat., § 1729 [P.P.C. § 5-37], which is cited as authority for preparation, certification, and filing of record in criminal appeals prosecuted *in forma pauperis* at the expense of the county, was repealed by the Laws of 1943, chapter 206, § 1, p. 639.

The trial judge is vested with almost absolute discretion in the matter of ordering a transcript of the testimony to be made at county expense in criminal cases. If the trial court in the case at bar denies the application of the defendant for a transcript to be furnished at the expense of Pierce county and the defendant appeals therefrom, may we say that the trial court has abused its discretion? Will our determination of that question be dependent upon whether the record discloses that the appeal is meritorious? How could we determine that question without the record? Bird has been granted the right to appeal. That appeal will be fruitless in the absence of a record. We will then be compelled to say that the fact that Bird has been granted the right of appeal demands preparation of a transcript at the expense of Pierce county, and that the mere denial by the trial court of Bird's application for the transcript, to be furnished at the expense of Pierce county, constitutes an abuse of discretion.

I incorporate by reference in this dissenting opinion, my dissenting opinion in *State v. Brown, supra.*

Bird was entitled to a fair trial. He had a fair trial. The orderly administration of justice demands that he be required to conform to the rules the same as any other accused. The people are entitled to expeditious administration of justice in criminal cases.

The petition of Bird should be denied.

SIMPSON, J., concurs with MILLARD, J.

JEFFERS, J. (dissenting)—I am unable to agree with the majority opinion in this case, and I am also unable to agree with much that is said in the dissenting opinion of Judge Millard. However, I do concur in the result of Judge Millard's dissent, but solely for the reason and upon the ground that no notice of appeal was ever served or filed in this case in accordance with Rule of Supreme Court 12, effective March 2, 1944, 18 Wn. (2d) 14-a. No notice of appeal having been served and filed, as required by the above rule, this court is without jurisdiction to entertain this appeal.